IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LINDA A. MENDENHALL,          *

                                 *

    Plaintiff,          *

                                 *

vs.                       * CIVIL ACTION NO. 21-00304-KD-B

                                 *

FRANK KENDALL,          *

Secretary,              *

Department of the Air Force,  *

                                 *

    Defendant.         *

## REPORT AND RECOMMENDATION

This action is before the Court for review of Plaintiff Linda A. Mendenhall's second amended complaint (Doc. 13). For the reasons stated herein, the undersigned recommends that this action be **DISMISSED with prejudice** based on Plaintiff's repeated failures to file a complaint that states a claim upon which relief may be granted and complies with the Federal Rules of Civil Procedure and this Court's orders.

I. **BACKGROUND**

A. **Original Complaint (Doc. 1).**

Plaintiff Linda A. Mendenhall ("Mendenhall"), a licensed attorney[1] appearing *pro se*, initiated this action by filing a complaint and two motions to proceed with prepayment of fees ("IFP

_____

[1] See https://www.jud.ct.gov/attorneyfirminquiry/JurisDetail.aspx (last visited Nov. 3, 2022).

motions"). (Docs. 1, 4, 5). Mendenhall's complaint[2] named the Secretary of the Air Force as the Defendant[3] and complained of the termination of her employment, "Genetic Discrimination, Reprisal, [and] Per Se Retaliation."[4] (Doc. 1 at 1). Mendenhall alleged that the Air Force discriminated against her on account of her religion, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Id. at 2). She also indicated that she was bringing claims for disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Id.).

Mendenhall stated that the alleged discrimination occurred at Maxwell Air Force Base from September 9, 2016 to March 7, 2017. (Id. at 2-3). She described the alleged discrimination as follows:

> I Linda A. Mendenhall, was hired by another Col. before Col. arrive in July 2016. I was hired at Redstone Arsenal Huntsville, Alabama from February 2009, until

---

[2] Mendenhall's original complaint utilized this Court's form complaint for a civil action alleging employment discrimination. (See Doc. 1).

[3] See Farrell v. U.S. Dep't of Just., 910 F. Supp. 615, 618 (M.D. Fla. 1995) ("The only proper Defendant in a Title VII suit or a claim of discrimination under the Rehabilitation Act is the head of the agency accused of having discriminated against the Plaintiff.").

[4] Unless otherwise indicated by brackets, quoted language from Mendenhall's filings is reproduced herein without modification or correction for typographical, grammar, or spelling errors.

> March 2014.  The complainant Linda A. Mendenhall was
> remove from her job for reporting contract fraud and
> settle with The Department of The Army.  The complainant
> was hired as a GS-14 with the Department Of The Air Force
> and later learn that the Department Of The Army reach
> out and revile what had happen at Redstone Arsenal and
> the complainant was removed.

(Id. at 3).

   **B.   First Order to Replead (Doc. 6).**

The Court granted Mendenhall's IFP motions and conducted an initial screening of her complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  (Doc. 6 at 1).  Upon review, the Court found that the complaint failed to state a claim for employment discrimination on the basis of genetics, religion, disability, or age, because it was devoid of facts that could plausibly suggest intentional discrimination on any of those bases.  (Id. at 7-8).  The Court set out the required elements of Mendenhall's putative discrimination claims and explained how her original complaint failed to include factual allegations to support each of those essential elements.  (Id. at 7-14).  The Court also noted that although the few factual allegations in the complaint appeared to relate to Mendenhall's claims of "Reprisal" and "Per Se Retaliation," the complaint failed to provide adequate notice of the factual grounds and statutory basis for such claims.  (Id. at 14-15).

The Court explained to Mendenhall the applicable pleading standards for a complaint in federal court, including the

requirements of Federal Rules of Civil Procedure 8 and 10 and the prohibition against "shotgun pleadings" which violate those requirements and fail to provide adequate notice of a plaintiff's claims. (Id. at 3-5). The Court ordered Mendenhall to file an amended complaint that complied with the following directives:

> In her first amended complaint, Mendenhall must (i) specifically identify all federal statutes or constitutional provisions under which she is asserting a cause of action or claim for relief **and** make clear which statute or constitutional provision each individual claim is brought under; (ii) allege **facts** sufficient to plausibly suggest the required elements of each cause of action or claim for relief; and (iii) plead her claims with sufficient specificity to conform to Rules 8 and 10. This includes identifying her pleading as a first amended complaint; specifying which factual allegations pertain to which causes of action or claims for relief; and providing the specific grounds upon which each of her claims for relief are based.

(Id. at 16) (emphasis in original). The Court cautioned Mendenhall that she should not assume that she would be granted further opportunities to amend her pleading and warned her that if she failed to timely file an amended complaint which corrected the noted deficiencies and stated a claim upon which relief could be granted, this action would be subject to dismissal. (Id. at 16-17).

## C.   First Amended Complaint (Doc. 7).

In response to the Court's first repleading order, Mendenhall filed a document that was apparently intended as a first amended complaint. (Doc. 7). However, Mendenhall's filing was not labeled

4

as a complaint, it lacked numbered counts and paragraphs, and it included an embedded request for "a four-week extension if any further documentation is requested by the Honorable Magistrate[.]" (See id.).

In the initial section of the first amended complaint, which purported to provide a "Back Ground of the Case," Mendenhall alleged that she was hired as a GS-14 contract attorney at Maxwell Gunner Annex in Montgomery, Alabama ("Maxwell") in July 2016. (Id. at 1). Mendenhall alleged that "[u]pon arriving she notice that she was treated different then her coworker by LTC. Michael King."[5] (Id.). Mendenhall alleged that upon Lt. Col. King's arrival at Maxwell, "he reaches out to [Mendenhall's] prior supervisor and Labor attorney Toby Davis the settlement attorney from Redstone Arsenal and [Mendenhall's] prior supervisor COL. Muller[,]" but "[w]hen ask did you speak to anyone at Redstone Arsenal COL. King response was he only spoke to the Jag office knowing that statement was false." (Id.).

Under the heading "Religious Discrimination," Mendenhall alleged that, before she arrived at her new job, Lt. Col. King reached out to her prior employer and spoke to her prior supervisor at Redstone Arsenal, Colonel Muller. (Id. at 2). Mendenhall reiterated that "[u]pon arriving [she] was treated different from

---

[5] Mendenhall indicated that she was hired by another colonel before Lt. Col. King arrived at Maxwell. (Doc. 7 at 1).

her co-worker" and stated that she "was assign to do paralegal work not contract work in which she was hired to performed." (Id.).  Mendenhall further alleged that Lt. Col. King "went to personnel" in November 2016 and changed her job duties without informing her.  (Id.).  Mendenhall also alleged that when she "and her spouse along with other employee was invited to Col. King home for a met other that work in the legal office" in November 2016, "LTC King sent an email to all employees that he supervises which stated that pork would be serve, knowing that the complainant was Jewish."  (Id.).  Mendenhall further alleged that "[d]uring 2016 Christmas dinner, LTC King only ask [Mendenhall's] religious back ground."  (Id.).

Under the heading "Disability Discrimination," Mendenhall stated: "Linda A. Mendenhall, file a complaint under ADA due to her disability of Lipedema."[6]  (Id.).  She alleged that she "requested accommodation for her difficulty in walking, climbing, stairs and standing for long periods of time[,]" and that "[d]uring morning briefing [she] was asking to stand for a long period of time and comments was made about her weigh by LTC Michael King her supervisor."  (Id.).

_____

[6] Mendenhall purported to bring her disability discrimination claim under the ADA in her first amended complaint despite having already been informed that she was not covered under the ADA as a federal employee, but instead would have been covered under the Rehabilitation Act.  (See Doc. 6 at 9-11; Doc. 7 at 2-3).

Under the heading "Age Discrimination," Mendenhall stated that "she was 54 years of age" at the time of her hiring, and that she "was removed from her job" and replaced by Johnathan Carrol, "a much younger employee then [Mendenhall]." (Id. at 3). Mendenhall alleged that she "was removed from her job" by Lt. Col. King, who "knew Johnathan Carrol was leaving the Air Force and was looking for employment." (Id.).

Under the heading "Genetic Discrimination," Mendenhall stated: "Linda A. Mendenhall. Makes this claim of discrimination based on her disability of Lipedema. LTC Col. Michael King knew of [Mendenhall's] condition and force her to stand during morning meetings, and made comments about her legs." (Id. at 4).

Under the heading "Reprisal and Per Se Retaliation," Mendenhall asserted that "LTC COL. King violated federal laws of reprisal when LTC King called [Mendenhall's] prior supervisor before starting her job at Maxwell . . . ." (Id.). According to Mendenhall: "When ask did he speak to anyone at Redstone Arsenal in Huntsville Al. LTC King statement on his declaration stated that he call, but no one call him back. That statement by COL. King was false." (Id.). Mendenhall alleged that "Col. King knew about [her] EEO activity by speaking to [her] prior supervisor." (Id. at 4-5). Mendenhall alleged that "Col. King also went to personnel to have the complainant job description changed" and "regarding his concerns with Ms. Mendenhall competency." (Id. at

7

5).  Mendenhall asserted that Lt. Col. King caused her "SF-50" to be "changed" in order to "justify not allowing [her] to do her job as a GS-14 contract attorney."  (Id.).  Mendenhall alleged that "[t]his allowed COL. King to remove [her] not for contract work but paralegal work."  (Id.).  Mendenhall claimed that "[s]uch alleged conduct violates Title V11 of the Civil Rights Act of 1964, which prohibits employers from retaliating against those who file charges of discrimination with the EEOC."  (Id.).

For relief, Mendenhall requested "back pay, front pay, [and] return to her job at Maxwell Air Force Base in Montgomery, Alabama."  (Id.).

### D.  "Application to Proceed in District Court Without Cost" (Doc. 8).

More than a month after filing her first amended complaint, Mendenhall filed a document titled "Application to Proceed in District Court Without Cost."  (Doc. 8).[7]  In that document, Mendenhall appeared to raise new allegations relating to her non-selection for the position of "GS-13 Acquisition Attorney" at Eglin Air Force Base in December 2020 and the fairness of subsequent EEO proceedings.  (See id. at 1-3).[8]

---

[7] Along with her application, Mendenhall filed a third IFP motion, which the Court denied as moot because Mendenhall had already been granted leave to proceed in forma pauperis.  (Docs. 9, 10).

[8] Mendenhall's application also included a request for court-appointed counsel in this case, notwithstanding the fact that she (Continued)

**E.    Second Order to Replead (Doc. 11).**

After reviewing Mendenhall's first amended complaint, the Court found that it failed to comply with the first repleading order, violated the Federal Rules of Civil Procedure, and failed to state a claim on which relief could be granted.  (Doc. 11 at 13).  The Court noted that Mendenhall did not label her pleading as a first amended complaint as directed (and, indeed, failed to include any title for her filing), and that she improperly embedded a request for an extension of time in her pleading.  (Id.).  The Court also noted that Mendenhall's pleading did not comply with Federal Rule of Civil Procedure 11(a) because it did not state her address, email address, or telephone number.  (Id. at 13-14).  The Court further noted that the first amended complaint violated Rule 10(b) because Mendenhall did not state her allegations in numbered paragraphs each limited as far as practicable to a single set of circumstances, but instead "lump[ed] all of her allegations under each heading together in a single block of sentences replete with legal arguments, citations, quotations, and discussions of cases, which are improper in a complaint."  (Id. at 14).  The Court also noted that the allegations in the first amended complaint were "not simple, concise, or direct, but [were] instead vague and circuitous, in violation of Rule 8(d)(1)."  (Id.).

---

is an attorney herself.  (Doc. 8 at 3-4).  The Court denied Mendenhall's request for appointment of counsel.  (Doc. 11 at 29).

The Court proceeded to explain in detail why the first amended complaint, as drafted, failed to state a claim upon which relief could be granted for religious discrimination, disability discrimination, age discrimination, genetic information discrimination, or retaliation. (Id. at 15-26). The Court also informed Mendenhall that to the extent she was seeking to assert new claims based on the Air Force's failure to hire her as a GS-13 Acquisition Attorney at Eglin Air Force Base in 2020, she was required to do so in a complaint properly filed in accordance with the Federal Rules of Civil Procedure, not in an *ad hoc* application requesting various other actions by the Court. (Id. at 26-27).

The undersigned observed that Mendenhall appeared to have made some effort, albeit inadequate, to comply with the Court's directives. (Id. at 27-28). Accordingly, the Court stated that it would give Mendenhall "one final opportunity to amend her complaint." (Id. at 28) (emphasis in original). The Court ordered Mendenhall to file a second amended complaint on or before August 12, 2022, which complied with the following directives:

> Mendenhall's second amended complaint must address and correct each of the deficiencies in her first amended complaint that are described in this order and must plead her claims with sufficient specificity to conform to Rules 8 and 10 of the Federal Rules of Civil Procedure. This includes, but is not limited to, (i) identifying her pleading as a second amended complaint; (ii) specifically identifying the federal statute(s) or constitutional provision(s) under which she is asserting each cause of action or claim for relief; (iii) alleging facts sufficient to plausibly suggest the required elements of

10

each cause of action or claim for relief; (iv) separating her causes of action or claims for relief into different, numbered counts; (v) stating her allegations in numbered paragraphs that are each limited as far as practicable to a single set of circumstances; (vi) specifying which factual allegations pertain to which causes of action or claims for relief; and (vii) providing the specific grounds upon which each of her claims for relief are based.  To the extent Mendenhall seeks to assert new claims based on her allegations in the "Application to Proceed in District Court Without Cost" (Doc. 8), she must include such claims in the second amended complaint.

(Id. at 30).

The Court cautioned Mendenhall "that the failure to timely file a second amended complaint that addresses and corrects each of the deficiencies noted in this order as instructed will result in a recommendation that this case be dismissed.  There will be no further opportunities to amend in order to correct pleading deficiencies."  (Id. at 31) (emphasis in original).

**F.   Untimely and Unsigned Second Amended Complaint.**

On August 15, 2022,[9] the Clerk's office received a document that was apparently intended to serve as Mendenhall's second

---

[9] Mendenhall's unsigned second amended complaint was not dated, but the accompanying envelope indicated that it was mailed on August 10, 2022.  It was not received by the Clerk's office until August 15, 2022.  The "'mailbox rule' . . . has not been extended to [non-prisoner] *pro se* litigants, who are expected to comply with all procedural rules."  See Jacobs v. Clayton Cty. Solic. Gen. Off., 685 F. App'x 824, 826 (11th Cir. 2017) (per curiam) (finding "no merit" to plaintiff's argument that her amended complaint was timely because she placed it in the mail on the date of the court's filing deadline and concluding that plaintiff filed her amended complaint on "the date it was received by the clerk's office"); Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir. (Continued)

amended complaint, along with more than 600 pages of purported exhibits. A preliminary review of the document revealed that it was not signed and did not include an email address or telephone number for Mendenhall as required by Federal Rule of Civil Procedure 11(a). In addition, a cursory review of the voluminous exhibits reflected that the vast majority of the documents were Mendenhall's husband's private medical records, which have absolutely no relevance to Mendenhall's claims in this case. Accordingly, the undersigned directed the Clerk's office to refrain from filing the unsigned pleading and the 600-plus pages of purported exhibits into the Court record. (Doc. 12 at 2-3). The Court also ordered Mendenhall to personally sign the second amended complaint and to include her telephone number and email address. (Id. at 3). Mendenhall was further directed to retrieve all of her purported exhibits except for pages 1 through 37, which appeared to relate to her second amended complaint. (Id.).

**G.   Second Amended Complaint (Doc. 13).**

Mendenhall signed the second amended complaint on August 30, 2022, and it is now her operative pleading. (Doc. 13). The second

---

1989) (per curiam) ("When papers are mailed to the clerk's office, filing is complete when the papers are received by the clerk."); Fed. R. Civ. P. 5(d)(2) ("A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge . . . ."). Thus, Mendenhall's unsigned second amended complaint, which was received by the Clerk's office on August 15, 2022, was untimely by three days. (See Doc. 11 at 30).

amended complaint, which is typed but contains the handwritten title of "2 Amendment," begins with an "Introductory and Jurisditional Statement" that states:

> This is and action seeking principally declaratory and injunctive relief, back pay, compensatory damages, and other relief to redress discrimination in employment on the basis of race, disability (Regarded as), a hostile environment, GINA, race, religion, and retaliation. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., as amended by the Civil Rights Act of 1991.
>
> This jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 and 1343(a)(3).

(Id. at 1).

Under the heading "Parties," Mendenhall states that she "was an attorney at Maxwell Air Force base, working under the immediate supervision of COL. Michael King[,]" and she notes that she "was hired by Col. Crawford prior to Col. King arrival in July, 2016." (Id. at 2).

Under the heading "Factual Actual Allegations," Mendenhall alleges that she "was hired as a GS-9 in 2009 at Redstone Arsenal, Huntsville Alabama" and "went from GS-9 to GS-14 in five years" from 2009 to 2014. (Id.). Mendenhall states that she filed "a racial discrimination EEO complainant against her supervisor at Redstone Arsenal" in 2014, and that the "case was settle and [she] was allowed to file for other Civil Service Jobs." (Id.). In July 2016, Mendenhall was hired by the Department of the Air Force as a GS-14 contract attorney, and she "started her employment on

September 19, 2016." (Id.). Mendenhall alleges that "[u]pon arriving" at Maxwell Air Force Base she "was being treated different from her co-workers and was the only attorney that was not allowed to do any contracts but paralegal work." (Id.). She asserts that "Col. King had spoken to [her] previous supervisor and denied it in his declaration, but from a sworn statement by Toby Davis he spoke to Col King." (Id.).

Mendenhall alleges that "Col. King visited Maxwell Human Resource office" in November 2016 and changed her "SF-50 to reassign without discussing it with [her]." (Id.). Mendenhall notes that Col. King "was not on the hiring panel" for her GS-14 position at Maxwell, and she states that "Col. King was very hostile toward [her]" and "criticize everything she was ask to do." (Id.). Mendenhall asserts that she "was hired to do contracts and was never allowed to do her job." (Id.).

Mendenhall alleges that "[d]uring one point in the office Col. King sent an email out to all employee stating he would like to have a diner at his resident for all his employees[,]" and the "email read that he would be serving pork, knowing that [Mendenhall] was Jewish." (Id.). Mendenhall further alleges that "[d]uring Christmas dinner Col. King ask [Mendenhall] about her religion but never ask anyone else." (Id.). Mendenhall states that she "was remove from her job in March 7, 2017 and later file

and eeoc appeal complaint for age, gender, religion, GNIA and retaliation." (Id.).

Mendenhall next alleges that she interviewed for a GS-13 attorney job at Lackland Air Force Base in August 2017 but was not hired for the job. (Id. at 3). She filed an EEO complaint after she was not selected for that position, "and during the investigation she learn that the panel had spoken to Col King and the person they selected was not practicing as an attorney but was a contract specialist." (Id.).

Mendenhall further alleges that she interviewed for another GS-13 position at Eglin Air Force Base in 2020 and was one of four attorneys selected for a reference check. (Id.). She asserts that the three other candidates turned down the job, but "she was giving a bad reference by Col. King and she was remove from the list" and "was denied employment." (Id.).

Mendenhall asserts five counts against Defendant, as follows:

### Count 1

Because of its action as outlined above. The Defendant has engaged in unlawful employment discrimination based on race in violation of Title V11 of the Civil Rights Act of 1991.

### Count 11

Because of its actions outlined above the Defendant has engaged in unlawful employment discrimination based on gender in violation of Title V11 of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991.

Count 111

> Because of its actions outlined above the Defendant has
> engaged in unlawful employment discrimination based on
> GINA in violation of Title v11 of the Civil Rights Act
> of 1964 as amended by the Civil Rights Act of 1991.

Count IV

> Because of its actions outlined above the Defendant has
> engaged in unlawful employment discrimination based on
> religion in violation of Title V11 of the civil Rights
> Act of 1964 as amended by the Civil Rights Act of 1991.

Count V

> Because of its actions outlined above the Defendant has
> engaged in unlawful employment discrimination based on
> retaliation in violation of Title V11 of the Civil Rights
> Act of 1964 as amended by the Civil Rights of 1991.

(Id. at 3-4).[10]

For relief, Mendenhall requests a declaratory judgment that
Defendant has engaged in unlawful discrimination, reinstatement to
her job at the GS-14 level, back pay and benefits, compensatory
damages in the amount of $300,000, and costs and expenses. (Id.
at 4).

---

[10] The Court notes that Mendenhall's "Introductory and
Jursditional Statement" asserts that "[t]his is an[ ] action
seeking . . . to redress discrimination in employment on the basis
of . . . disability (Regarded as), [and] a hostile environment,"
but none of her five counts assert claims for disability
discrimination or hostile work environment. (See Doc. 13 at 1, 3-
4).

16

## II.  **STANDARDS OF REVIEW**

### A.    **28 U.S.C. § 1915(e)(2)(B).**

Because Mendenhall is proceeding *in forma pauperis*, this Court has reviewed her second amended complaint pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B).  That statute requires a district court to dismiss the action of a plaintiff proceeding *in forma pauperis* if it determines the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i–iii).

A case is frivolous under § 1915(e)(2)(B)(i) "when it appears the plaintiff has 'little or no chance of success.'"  Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted).  A court may conclude that a case has little or no chance of success and dismiss the complaint before service of process when the complaint's legal theories are "indisputably meritless" or when its factual contentions are "clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

Dismissals for failure to state a claim under § 1915(e)(2)(B)(ii) are governed by the same standard as dismissals under Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  This necessarily requires that a plaintiff include factual allegations for each essential element of her claim.  Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010).  A complaint does not require detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

Although courts ordinarily construe *pro se* pleadings liberally, this rule does not apply where, as here, the litigant is a licensed attorney. Okonkwo v. The Callins Law Firm, LLC, 668 F. App'x 875, 876 (11th Cir. 2016) (per curiam) (citing Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977)).[11]  Thus, the Court holds Mendenhall to the standards required of licensed attorneys.

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**B.    Federal Rules of Civil Procedure 8 and 10.**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 8(a)(2)'s purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Twombly</u>, 550 U.S. at 555 (quotation omitted).  Each allegation in a complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  Federal Rule of Civil Procedure 10(b) further provides that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." <u>Id.</u>

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015).  The Eleventh Circuit has roughly identified four broad categories of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) those that are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;"

(3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." See id. at 1321-23. Although there are different types of shotgun pleadings, their "unifying characteristic . . . is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id. at 1323.

### III. **DISCUSSION**

Despite this Court's repeated and detailed orders requiring her to cure her numerous pleading deficiencies, Mendenhall filed a second amended complaint that violates the prohibition against shotgun pleadings, runs afoul of the Federal Rules of Civil Procedure, disregards this Court's clear and specific directives, and fails to state a claim upon which relief can be granted.

The first problem with the second amended complaint is that it fails to indicate which factual allegations relate to which claims. Instead, the five counts state only legal conclusions while indiscriminately referencing Defendant's "actions outlined above" without specifying which "actions" they are referring to. (See Doc. 13 at 3-4). This makes it difficult, if not impossible, to discern without speculating "which allegations of fact are

intended to support which claim(s) for relief." See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). This is particularly true here because Mendenhall fails to plead her factual allegations in a clear and direct manner that obviously connects them to any particular cause of action. See Fed. R. Civ. P. 8(d)(1) ("Each allegation must be simple, concise, and direct."). Moreover, the second amended complaint raises new allegations not included in the two prior complaints which appear to relate to events that occurred after the termination of Mendenhall's employment at Maxwell. (See Doc. 13 at 3). However, the purpose of these new allegations is not clear, and the Court can only speculate as to which of the complaint's five counts, if any, are related to or based on (either wholly or partly) the new allegations.

Mendenhall's error does not fit perfectly into the first shotgun pleading category roughly delineated in Weiland because her counts do not explicitly adopt the allegations of all preceding counts. However, it is substantially similar and creates the same type of confusion by failing to provide "adequate notice of the claims against [Defendant] and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323; see Jarmon-Goodman v. City of Muscle Shoals, Ala., 2018 U.S. Dist. LEXIS 173458, at *7, 2018 WL 4896372, at *3 (N.D. Ala. Oct. 9, 2018) ("[P]laintiff has pled multiple counts, each of which incorporates all of the preceding

factual allegations: a practice that has been repeatedly condemned by the Eleventh Circuit, and sometimes described as a 'mortal sin.'") (quoting Weiland, 792 F.3d at 1322); Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); Isaac v. United States, 809 F. App'x 595, 599 (11th Cir. 2020) (per curiam) (finding a shotgun pleading where the amended complaint "incorporates all the facts into each count . . . and does not plainly set forth which facts relate to which count"); P&M Corp. Fin., LLC v. L. Offs. of David J. Stern, P.A., 2016 U.S. Dist. LEXIS 34028, at *5-6, 2016 WL 1045826, at *2 (S.D. Fla. Mar. 16, 2016) (stating that a complaint is a shotgun pleading when it "forces the district court to sift through the facts presented and decide for itself which are material to the particular claims asserted").

The complaint violates Rule 10(b) because, although Mendenhall states some of her allegations in numbered paragraphs, she restarts her numbering under each new subheading, essentially depriving the numbering of its meaning.[12]  More significantly, Mendenhall's numbered allegations are not "limited as far as practicable to a single set of circumstances," Fed. R. Civ. P.

---

[12] None of the allegations in Mendenhall's five counts are stated in numbered paragraphs.  (See Doc. 13 at 3-4).

10(b), but instead frequently consist of multiple assertions, some of which have no logical connection with one another.[13]  This form of pleading further exacerbates the difficulty of determining which factual allegations are intended to support which claims.

Mendenhall's complaint also violates – and indeed, sometimes disregards entirely – the directives set forth in the Court's repleading orders.  As mentioned previously, Mendenhall failed to comply with this Court's specific directives to file her second amended complaint by August 12, 2022, to identify her pleading as a second amended complaint, to state her allegations in numbered paragraphs each limited as far as practicable to a single set of circumstances, to specify which factual allegations pertain to which claims for relief, and to provide the specific grounds upon which each of her claims for relief are based.  (See Doc. 11 at 30; Doc. 13, generally).

Further, it appears that Mendenhall simply glossed over this Court's discussion of the required elements of her various claims and why her previous complaints lacked factual allegations necessary to support each of those elements.  Indeed, Mendenhall's second amended complaint reflects little, if any, discernible effort to remedy the deficiencies the Court highlighted with

---

[13] For example, Mendenhall makes unrelated allegations in the same paragraph regarding her suspicion that Lt. Col. King had spoken to her prior supervisor, and regarding Lt. Col. King serving pork at a dinner at his home.  (See Doc. 13 at 2).

respect to her prior complaints and fails to state claims for relief under the applicable discrimination statutes.

For example, Mendenhall's first amended complaint claimed genetic discrimination "based on her disability of Lipedema" and alleged that Lt. Col. King knew of her condition "and force her to stand during morning meetings, and made comments about her legs." (Doc. 7 at 4). The Court explained at length in the second repleading order why those allegations did not state a valid claim for genetic information discrimination in violation of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), which makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a); (see Doc. 11 at 21-23). Notwithstanding the Court's explanation, the instant complaint nonsensically asserts "unlawful employment discrimination based on GINA in violation of Title v11" without *any* factual allegations that could even conceivably support such a claim. (See Doc. 13 at 2-3). While Mendenhall's prior complaint mistakenly asserted genetic discrimination based on a manifested condition ("her disability of Lipedema"), there is (if possible) even less factual support for a GINA violation in the instant complaint, which identifies no condition or impairment

whatsoever, much less "genetic information" as defined in the statute.

Similarly, the second amended complaint flouts the Court's directives relating to Mendenhall's religious discrimination claim.  In the second repleading order, the Court noted that Mendenhall's "vague and innocuous allegations" regarding Lt. Col. King serving pork at an employee gathering at his home despite knowing that Mendenhall was Jewish and only asking Mendenhall's religious background during Christmas dinner did not plausibly suggest that Lt. Col. King or anyone else at Maxwell intentionally discriminated against Mendenhall because of her religion, and that Mendenhall had therefore failed to state a plausible religious discrimination claim under Title VII.  (Doc. 11 at 15).  Yet, the second amended complaint repeats those same assertions – this time without connecting them to any particular cause of action – while adding no potentially relevant factual allegations that could suffice to push Mendenhall's religious discrimination claim over the line from conceivable to plausible.  (See Doc. 13 at 2-3).

Unlike her two prior complaints, Mendenhall's second amended complaint purports to assert claims for discrimination on the basis of race and gender in violation of Title VII.  (See Docs. 1, 7; Doc. 13 at 1, 3).  However, despite this Court's repeated admonitions that an employment discrimination complaint must provide enough factual matter to plausibly suggest intentional

discrimination, (see Doc. 6 at 7-8; Doc. 11 at 15), Mendenhall
fails to allege any factual matter even remotely suggestive of
intentional discrimination on the basis of race or gender.  (See
Doc. 13 at 2-3).

Finally, the factual allegations in the instant complaint
that could potentially relate to Mendenhall's Title VII
retaliation claim remain "too vague and ambiguous" to state a claim
upon which relief can be granted.  (See Doc. 11 at 26).  As the
Court previously informed Mendenhall, "[t]o establish a
retaliation claim under Title VII, 'a plaintiff must prove that he
engaged in statutorily protected activity, he suffered a
materially adverse action, and there was some causal relation
between the two events.'"  (Id. at 24) (quoting Burlington v. Bagby
Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008)).  The
instant complaint alleges that Mendenhall filed multiple EEO
complaints, which respectively related to "racial discrimination"
at Redstone Arsenal; "age, gender, religion, GNIA and retaliation"
at Maxwell Air Force Base; and Mendenhall's non-selection for an
attorney position at Lackland Air Force Base.[14]  (See Doc. 13 at
2-3).  It also alleges that Mendenhall was "remove from her job"
at Maxwell Air Force Base on March 7, 2017, that she was not hired

---

[14] Mendenhall's "Application to Proceed in District Court Without
Cost" also indicated that she filed an EEO complaint related to
her non-selection for the attorney position at Eglin Air Force
Base.  (See Doc. 8).

for an attorney job at Lackland Air Force Base later that year, and that she was not hired for an attorney job at Eglin Air Force Base in 2020.   (Id.).   But, while the complaint alleges communication between Lt. Col. King and Mendenhall's prior supervisor at Redstone Arsenal, and between Lt. Col. King and the subsequent hiring panels, it does not even go so far as to conclusorily assert – much less provide facts plausibly suggesting – that there was a causal connection between the filing of any of the EEO complaints and any of the potential adverse actions alleged.   Moreover, as discussed previously, the complaint fails to identify the grounds for the retaliation claim, leaving the Court guessing as to whether Mendenhall is alleging retaliation based on the filing of her 2014 EEO complaint, subsequent EEO complaints, or all or none of the above.

In sum, Mendenhall has not made a serious attempt to cure the deficiencies raised with respect to her prior complaints.   Her instant complaint makes it difficult to discern the factual basis for each count without engaging in speculation, it fails to present Mendenhall's allegations in separately numbered paragraphs limited as far as practicable to a single set of circumstances, and it fails to even attempt to address (much less correct) multiple claim-specific pleading deficiencies identified by the Court. Under no possible construction could the instant complaint be read to state a claim upon which relief may be granted for

discrimination on the basis of race, gender, "GINA," or religion, and the allegations that might possibly relate to a retaliation claim are too vague, indirect, and disjointed to state a plausible claim for relief.

**Dismissal With Prejudice is Warranted.**

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." Woldeab v. Dekalb Cty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) (quotation omitted). However, a court need not allow further amendment "where there has been . . . repeated failure to cure deficiencies by amendments previously allowed[.]" Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see Pelletier v. Zweifel, 921 F.2d 1465, 1522 n.103 (11th Cir. 1991) ("If Pelletier had refused to comply with the court's directive to file a repleader in conformity with the rules of civil procedure, the court could have dismissed the complaint under Fed.R.Civ.P. 41(b), on the ground that Pelletier failed to comply with Fed.R.Civ.P. 8(a) and (e) to provide a short, clear, and concise statement of the claim.") (citations omitted), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Birdette v. Saxon Mortg., 502 F. App'x 839, 841 (11th Cir. 2012) (per curiam) (affirming dismissal with prejudice for failure to comply

with a court order where plaintiffs "were specifically informed as to how to replead their complaint to state a claim, and warned that a failure to comply with the court's order would result in dismissal, and they still failed to cure the deficiencies"); Abdullah v. City of Plant City Police Dep't, 2017 U.S. Dist. LEXIS 119898, at *4, 2017 WL 6554411, at *2 (M.D. Fla. July 31, 2017) (dismissing plaintiff's third amended complaint with prejudice when it "fail[ed] to cure his previous deficiencies, [was] not a short and plain statement of his claim, and fail[ed] to comply with this Court's specific, detailed instructions on how to remedy the deficiencies"); Phillips v. Brown, 2022 U.S. Dist. LEXIS 126320, at *19, 2022 WL 2806551, at *7 (N.D. Fla. June 28, 2022) (recommending that leave to amend be denied where court twice screened plaintiff's complaint under 28 U.S.C. § 1915, identified several deficiencies, informed plaintiff that his claims were deficient, and gave plaintiff two opportunities to provide additional factual allegations to support his claims, but plaintiff repeatedly failed to state plausible claims for relief), report and recommendation adopted, 2022 U.S. Dist. LEXIS 126259, 2022 WL 2803656 (N.D. Fla. July 18, 2022).

A court "may *sua sponte* dismiss an action pursuant to Federal Rule of Civil Procedure 41(b) if the plaintiff fails to comply with court rules or a court order." Smith v. Bruster, 424 F. App'x 912, 914 (11th Cir. 2011) (per curiam) (citing Fed. R. Civ. P.

41(b); <u>Betty K Agencies, Ltd. v. M/V Monada</u>, 432 F.3d 1333, 1337 (11th Cir. 2005)). "In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation." <u>Zocaras v. Castro</u>, 465 F.3d 479, 483 (11th Cir. 2006) (citing <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 630–31 (1962)). To dismiss an action with prejudice for failure to prosecute, comply with the Federal Rules of Civil Procedure, or follow a court order, the court must find "a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." <u>Betty K Agencies</u>, 432 F.3d at 1339. "While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989).

As described in detail above, the Court has twice given Mendenhall fair notice of the defects in her prior complaints and ample opportunity to correct those deficiencies and state a claim upon which relief may be granted. The Court has also made Mendenhall fully aware of the consequences of noncompliance. The Court has carefully reviewed Mendenhall's filings and highlighted their numerous deficiencies in an effort to give Mendenhall a meaningful opportunity to correct the errors in her pleadings, but Mendenhall's resulting attempts to cure her pleading defects have

been ineffectual at best. Indeed, the second amended complaint is inferior to its predecessor in some significant respects, and it is apparent based on a review of the second amended complaint that Mendenhall simply disregarded much of the discussion and directives set forth in the second repleading order. At this juncture, it appears that Mendenhall is unwilling or unable to amend her pleadings to comply with the Federal Rules of Civil Procedure and the Court's orders, and there is no indication that any further opportunities to amend would lead to improved results.

The Court again notes that Mendenhall was ordered to file her second amended complaint on or before August 12, 2022, and she was specifically warned that the failure to timely file a second amended complaint that addressed and corrected each of the deficiencies noted in the second repleading order would result in a recommendation that this case be dismissed without further leave to amend. (See Doc. 11 at 30-31). Despite this stark warning, Mendenhall filed nothing until August 15, 2022, three days after the deadline, when the Clerk received an *unsigned* second amended complaint and more than 600 pages of purported exhibits primarily comprised of irrelevant third-party medical records.

It bears emphasis that Mendenhall is a licensed attorney who has alleged in this action that she was denied employment as a GS-14 level attorney not because of competency issues, but rather due to various forms of unlawful discrimination and reprisal. (See

Docs. 1, 7, 13).  Under these circumstances, Mendenhall's recurring failure to adhere to the standards expected of even non-attorney *pro se* litigants is inexplicable and inexcusable.  Because Mendenhall has willfully violated this Court's directives and repeatedly failed to plead a complaint that complies with the Federal Rules of Civil Procedure and states a claim upon which relief can be granted, the undersigned recommends that this action be dismissed with prejudice.

### IV.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Mendenhall's second amended complaint (Doc. 13) and this action be **DISMISSED with prejudice.**

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on

unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **3rd** day of **November, 2022.**

        /S/ SONJA F. BIVINS
      UNITED STATES MAGISTRATE JUDGE